UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICK COLLINS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 12-10756-NMG |
| DOES 1 - 38, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION
## ON MOTIONS TO QUASH AND TO SEVER

February 19, 2013

DEIN, U.S.M.J.

### I.  INTRODUCTION

The plaintiff, Patrick Collins, Inc. ("Patrick Collins"), is the registered owner of the copyright to the adult motion picture "Big Wet Brazilian Asses 7."  It has brought this action against 38 unidentified "Doe" defendants, claiming that each of them, acting without the permission or consent of the plaintiff, reproduced and distributed to the public at least a substantial portion of the copyrighted work using computer software known as "BitTorrent" file sharing technology.  By its complaint in this action, Patrick Collins has asserted claims against the defendants for copyright infringement and contributory copyright infringement pursuant to the Federal Copyright Act, 17 U.S.C. §§ 101, et seq.  The plaintiff is seeking both money damages and injunctive relief.

This case is part of what has been described as a "nationwide blizzard" of copyright infringement actions that have been filed by adult film producers against large numbers of Doe defendants identified only by their Internet Protocol ("IP") addresses. See In re BitTorent Adult Film Copyright Infringement Cases, Civil Action Nos. 11-3995 (DRH)(GRB), 12-1147 (JS)(GRB), 12-1150 (LDW)(GRB), 12-1154 (ADS)(GRB), 2012 WL 1570765, at *1 (E.D.N.Y. May 1, 2012) (slip op.).  It also is one of a number of such actions that have been filed in this district by various adult video companies, all of which have been represented by the same counsel and involve virtually identical claims and filings.  See SBO Pictures v. Does 1-41, Civil Action No. 12-10804-FDS, 2012 WL 5464182, at *1 (D. Mass. Nov. 5, 2012) (slip op.) (listing examples of similar cases). The plaintiffs in these cases typically file a complaint alleging that a large group of "Doe" defendants identified only by their IP addresses illegally reproduced and distributed a pornographic motion picture using BitTorrent technology as part of a single "swarm."  In order to identify the individuals associated with each of the IP addresses at issue, the plaintiffs then move for permission to serve Rule 45 subpoenas upon the Internet Service Providers ("ISPs") responsible for assigning IP addresses to each of the Doe defendants. See id. (describing typical strategy used by adult film producers in similar copyright infringement cases filed in Massachusetts).  The threat of disclosure typically triggers challenges to the subpoenas as well as early settlements by some of the Doe defendants.

This is the strategy that has been employed by Patrick Collins in this case. Following the filing of its complaint, Patrick Collins filed an ex parte motion for early

discovery, and was granted permission to serve Rule 45 subpoenas upon the relevant

ISPs.  However, before any names were made public, the Doe defendants were given an

opportunity to challenge the subpoenas or attempt to resolve the matter with the plaintiff.

To date, Patrick Collins has reached settlements with four of the Doe defendants and has

dismissed those defendants from the litigation with prejudice and without ever revealing

their identities.  Two of the Doe defendants, Doe Number 30 and a second Doe who is

acting <u>pro se</u> and has not identified himself[1] by name, Doe number or IP address ("Pro Se

Doe"), have filed motions to quash the subpoenas that were issued to their ISPs. Those

motions are currently pending before the court.

Specifically, by his motion (Docket No. 10), Doe Number 30 is seeking an order

quashing a subpoena that was served on Verizon in order to obtain his personally

identifying information.  Doe Number 30 contends that such an order is warranted under

Fed. R. Civ. P. 45 because the harm that he would suffer as a result of such disclosure,

and his interest in maintaining his privacy, outweigh the plaintiff's need for discovery.

He also argues that under the circumstances of this case, Verizon is barred from

disclosing his personally identifying subscriber information pursuant to 47 U.S.C. § 551.

In support of his motion (Docket No. 11), Pro Se Doe contends that the joinder of

38 defendants in this action is improper under Fed. R. Civ. P. 20 because the alleged

---

[1]  Due to their anonymity, this court is unable to determine whether the Does who have
filed motions are male or female.  For purposes of simplicity, this court has referred to those Does
using the masculine pronouns.

infringement was committed by unrelated defendants who acted separately and may have different defenses, and because the alleged conduct took place at different times and in different locations.  He also contends that under the circumstances of this case, permitting joinder would create a substantial risk of unfairness to the individual Does.  Accordingly, by his motion, Pro Se Doe is seeking an order severing the defendants and dropping Doe Nos. 2-38 from the litigation pursuant to Fed. R. Civ. P. 21.  Because Pro Se Doe's motion arises under Rules 20 and 21 rather than Rule 45, this court has construed it as a motion to sever rather than a motion to quash a subpoena.

For all the reasons detailed below, this court finds that while joinder of the defendants may be permissible under Fed. R. Civ. P. 20(a), the interests of justice and judicial economy would best be served if all of the defendants except Doe Number 1 were severed and dropped from the case pursuant to Fed. R. Civ. P. 21.  Accordingly, this court recommends to the District Judge to whom this case is assigned that Pro Se Doe's motion to sever (Docket No. 11) be ALLOWED, and that Patrick Collins' claims against all  defendants except Doe Number 1 be dismissed without prejudice to refiling against each of the defendants individually.  In light of this court's recommendation that Doe Number 30 be dismissed from the case, this court further recommends that the "Motion to Quash Subpoena" (Docket No. 10) filed by that individual be DENIED AS MOOT.

## II.  OVERVIEW

Since the filing of this litigation in April 2012, courts in this district as well as elsewhere have become increasingly troubled by what some commentators have

described as "copyright trolling," whereby the owner of a valid copyright "files a mass

copyright infringement lawsuit and subpoenas identifying information for anonymous

Doe defendants, intending to send demand letters and achieve prompt settlements for

limited amounts rather than intending to actually litigate the claims asserted."  Kick Ass

Pictures, Inc. v. Does 1-25, C.A. No. 12-10810-MLW, 2013 WL 80162, at *1 (D. Mass.

Jan. 4, 2013).  As one Judge in this District cautioned in a recent decision:

> While it is without question that a valid copyright holder is entitled
> to seek protection of its intellectual property in federal court, it
> appears that in at least some of these cases, adult film companies
> may be misusing the subpoena powers of the court, seeking the
> identities of the Doe defendants solely to facilitate demand letters
> and coerce settlement, rather than ultimately serve process and
> litigate the claims.  And while it is true that every defendant to a
> lawsuit must assess reputational costs in his or her determination of
> whether to settle or defend an action, the potential for
> embarrassment in being publicly named as allegedly infringing such
> salacious works as "Big Butt Oil Orgy 2" or "Illegal Ass 2," may be
> playing a markedly influential role in encouraging a myriad of Doe
> defendants to settle once subpoenas are issued – a bargaining chip
> the adult film companies appear to well understand.

Third Degree Films v. Does 1-47, 286 F.R.D. 188, 190 (D. Mass. 2012) (footnotes

omitted).  Thus, courts around the country have become wary of allowing adult film

companies to employ the mechanisms of the judicial process, such as early discovery and

joinder, to carry out potentially abusive or coercive litigation strategies.  See id. at 190-

91.

   Although the record before this court reveals no evidence of improper tactics or

bad faith by Patrick Collins in this action, the fact that four settlements have occurred

before any of the defendants have been identified in the public record illustrates how these types of cases create a strong tool for leveraging early settlements. Accordingly, this court remains mindful of the potential that these cases have for abuse, and it is against this backdrop that this court considers the Doe defendants' pending motions to quash and to sever.

## III.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Patrick Collins is a California corporation and the owner of the copyright to the motion picture "Big Wet Brazilian Asses 7" (the "Motion Picture"). (Compl. (Docket No. 2) ¶¶ 6, 8). The Motion Picture is widely available on DVD, and may be purchased through various vendors for under $20. (Id. ¶ 8). Patrick Collins alleges that each of the 38 Doe defendants has infringed its copyright by using and continuing to use "an online media distribution system (sometimes referred to as a 'peer to peer' network or a 'P2P' network) to reproduce at least one copy of the Motion Picture, and to distribute to the public, including by making available for distribution to others, copies of the Motion Picture." (Id. ¶ 21). It further claims that each of the defendants accomplished the unlawful reproduction and distribution using BitTorrent file sharing software. (Id. ¶ 5).

As the court described in Third Degree Films v. Does 1-47,

> BitTorrent is a peer-to-peer file sharing protocol used for the distri-
> bution and sharing of data over the Internet, including files contain-
> ing digital versions of motion pictures. BitTorrent is different from
> traditional peer-to-peer networks in that it organizes all users who
> wish to download a particular file into a collective distribution net-
> work, known as a "swarm." Being part of a swarm allows users to

simultaneously download and upload pieces of the media file from each other, rather than download the entire file from a single source.

File sharing through the BitTorrent network begins with a single individual, often referred to as a "seed" user or "seeder," who intentionally chooses to share a particular file with a BitTorrent swarm.  The original file in this case contains the entire Motion Picture.  Once the file has been shared by the seed user, other members of the swarm can download the original file, which creates an exact digital copy on the computers of the downloading users. Each user requesting to download the file becomes a member of the swarm and consequently receives pieces of the original file. Eventually, the entire file is broken into pieces and distributed to various members of the swarm who may then "reassemble" the file by exchanging pieces with one another.  Once a piece of the file is downloaded, it is immediately made available for distribution to other users seeking to download the file, subsequently turning each downloader into an uploader.

286 F.R.D. at 192-93 (quoting Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 448 (D. Mass. 2011)).  See also Compl. ¶¶ 9-10 (summarizing the BitTorrent protocol); Declaration of Jon Nicolini ("Nicolini Decl.") ¶¶ 7-9, 12-13 (describing BitTorrent software).[2]  Patrick Collins claims that each of the Doe defendants, through the use of this process, not only copied the constituent elements of the copy-righted work, but also "induced, or caused, or materially contributed to the infringing conduct of the other Defendants."  (Compl ¶¶ 29-30).

When individuals engage in downloading and/or uploading of a file, they expose their IP addresses to the public.  (Id. ¶ 12).  In the instant case, Patrick Collins engaged an

---

[2]  The Declaration of Jon Nicolini is attached as Exhibit B to the complaint (Docket No. 2).

investigator to identify computers involved in uploading and/or downloading the Motion Picture through the use of BitTorrent technology.  (See Nicolini Decl. ¶¶ 3, 20-26).  The investigation allegedly revealed that at least one computer at each of the 38 IP addresses listed in Exhibit A to the complaint was used to make an unauthorized digital file copy of at least a substantial portion of the Motion Picture, and to make that file available for download by others on the peer-to-peer network.  (Id. ¶ 32; see also Compl. Ex. A). Additionally, the investigation allegedly revealed that the individuals associated with those IP addresses not only swapped the same Motion Picture, but also swapped the exact same file, as identified by the file's unique hash mark (a 40-character hexadecimal string which is comparable to a forensic digital fingerprint).  (Compl. ¶ 11; see also Nicolini Decl. ¶ 32; Compl. Ex. A).  Thus, although the individuals using the 38 IP addresses engaged in the alleged unauthorized transactions on different dates and at different times between December 23, 2011 and February 15, 2012 (see Compl. Ex. A), the plaintiff maintains that they all were part of the same swarm and that they engaged in a series of related transactions.  (Compl. ¶¶ 5, 13; Nicolini Decl. ¶ 32).

On April 28, 2012, Patrick Collins commenced this action against the 38 Doe defendants identified only by the IP addresses set forth in Exhibit A to the complaint. (Docket Nos. 1-2).  Two days later, on April 30, 2012, the plaintiff filed an emergency motion for discovery by which it sought permission to serve subpoenas upon the defendants' respective ISPs.  (Docket No. 4).  By way of the proposed subpoenas, Patrick Collins sought to obtain information sufficient to identify each of the 38 Doe defendants,

including the name, address, email address, and Media Access Control Address of each defendant.  (Docket No. 5 at 1).

On May 14, 2012, this court granted the plaintiff's emergency motion, thereby allowing Patrick Collins to serve the requested subpoenas, along with a Court Directed Notice Regarding Issuance of Subpoena ("Notice"), which had been proposed by the plaintiff as part of its emergency motion and was to be served by the ISPs upon each of the Doe defendants within 7 days of service of the subpoena.  (Docket No. 8).  The Notice included a brief description of the lawsuit, and informed the putative defendants of some of their rights and options, including but not limited to, the right to challenge the subpoena in court by filing a motion to quash or vacate the subpoena within 30 days from the date of the Notice, and the option of contacting the plaintiff's representatives to discuss the possibility of settlement.  (Id. at Appendix A).  It also provided a list of organizations that the Does could contact for assistance in finding counsel.  (Id.).

Following the allowance of Patrick Collins' motion for discovery, Doe Number 30, through his counsel, filed the pending motion to quash the subpoena issued to his ISP, and Pro Se Doe filed the pending motion to sever on the grounds of improper joinder. Additionally, on August 25, 2012, Patrick Collins notified the court that it had reached settlements with Doe Nos. 4, 11, 12, and 17.  (Docket No. 14).  Those individuals, who have never been named publicly, have been dismissed from the action with prejudice, thereby leaving 34 Doe defendants remaining in the case.

Additional factual details relevant to this court's analysis are described below where appropriate.

## IV.  ANALYSIS

### A.  Standing

Prior to reaching the merits of the Doe defendants' motions, this court must address the threshold issue raised by the plaintiff as to whether those defendants have standing to challenge subpoenas issued to third party ISPs.  Patrick Collins argues that the Doe defendants lack standing because they cannot assert a privilege over the information being sought.  This court disagrees, and finds that the motions should not be denied on this basis.

"As a general rule, 'a party lacks standing to quash a subpoena issued to a nonparty unless the party has a claim of privilege attached to the information sought or unless it implicates a party's privacy interests.'" Malibu Media, LLC v. John Does 1-14, — F.R.D. — , 2012 WL 6115653, at *2 (N.D. Ind. Dec. 10, 2012) (quoting Hard Drive Prods. v. Does 1-48, No. 11 CV 9062, 2012 WL 2196038, at *3 (N.D. Ill. June 14, 2012)).  Courts in cases similar to this one have found that accused infringers in the Doe defendants' situation have "at least a minimal privacy interest in the information requested by the subpoena[.]"  Id. at *3.  See also Sunlust Pictures, LLC v. Does 1-75, No. 12 C 1546, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012) (slip op.) (same).  They also have determined that "however minimal or 'exceedingly small' the Doe Defendants' interests . . . are, parties need only have '*some* personal right or privilege in

the information sought' to have standing to challenge a subpoena to a third party." Third Degree Films, Inc. v. Does 1-108, Civil Action No. DKC 11-3007, 2012 WL 669055, at *2 (D. Md. Feb. 28, 2012) (slip op.) (citation omitted). See also Malibu Media, LLC v. John Does 1-14, 2012 WL 6115653, at *3 (finding that Doe defendant had standing to object to subpoena served on ISP where he had "at least a minimal privacy interest in the information requested" (quotations and citation omitted)); Sunlust Pictures, LLC v. Does 1-75, 2012 WL 3717768, at *2 (same).  Accordingly, this court concludes that the Doe defendants have standing to challenge subpoenas served on their ISPs in this case.

In any event, Fed. R. Civ. P. 21 provides that "[o]n motion *or on its own*, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  (Emphasis added).  Therefore, even if the defendants had no standing to challenge the subpoenas, the court would have authority to decide whether the matter should be severed on the grounds of misjoinder or in the interests of justice, and whether defendants should be dropped from the case.

**B.   Anonymity**

Another preliminary issue raised by the plaintiff in opposition to the defendants' motions is whether the Pro Se Doe's motion should be denied on the grounds that he has failed to move for permission to proceed anonymously, or to provide any adequate reason for doing so.  Again, this court finds that Pro Se Doe's motion should not be denied on this basis.

As an initial matter, the plaintiff's overly technical argument that Pro Se Doe unilaterally withheld his identifying information, without seeking permission from the court, is unpersuasive. On the very first page of his motion, Pro Se Doe expresses fear about revealing his identity in light of the aggressive tactics used by adult film companies to extract settlements in other cases, and he specifically requests permission to file his motion without revealing his personally identifying information. (See Docket No. 11 at 1). This request is more than sufficient to present the issue of anonymity to the court, particularly given the fact that the individual in question is proceeding pro se. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (stating that documents filed pro se must be liberally construed).

This court also finds that under the circumstances presented here, it is appropriate for Pro Se Doe to proceed anonymously at this preliminary stage in the litigation. It is true that "[a]s a general rule, parties may not litigate their disputes anonymously." Malibu Media, LLC v. John Does 1-13, No. CV 12-1156(JFB)(ETB), 2012 WL 2325588, at *1 (E.D.N.Y. June 19, 2012) (slip op.) (quoting John Wiley & Sons, Inc. v. John Does Nos. 1-27, No. 11 CV 7627, 2012 U.S. Dist. LEXIS 13667, at *1-2, 2012 WL 364048 (S.D.N.Y. Feb. 3, 2012)). Indeed, Fed. R. Civ. P. 11(a) provides in relevant part that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name -- or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number." Furthermore, Fed. R. Civ. P. 17(a)(1) requires that "[a]n action . . . be prosecuted in the

12

name of the real party in interest."  "Nevertheless, permitting a party to proceed
anonymously may be warranted in 'exceptional circumstances,' such as 'matters of a
highly sensitive and personal nature, real danger of physical harm, or where the injury
litigated against would be incurred as a result of the disclosure of the plaintiff's
identity.'"  Sunlust Pictures, LLC v. Cisa, Civil Action No. 12-cv-00656-CMA-KMT,
2012 WL 5187837, at *3 (D. Colo. Oct. 19, 2012) (slip op.) (quoting Femedeer v. Haun,
227 F.3d 1244, 1246 (10th Cir. 2000)) (alterations omitted).  Moreover, "[t]he court must
. . . 'weigh the public interest in determining whether some form of anonymity is
warranted.'"  Id. (quoting Femedeer, 227 F. 3d at 1246).

        This case presents the type of exceptional circumstances that warrant permission
to proceed anonymously.  By their motions, Doe Number 30 and Pro Se Doe are
challenging the subpoenas served on their ISPs "for the very purpose of protecting their
personal identifying information from disclosure."  Id.  Thus, "[r]equiring Movants to
proceed without anonymity would effectively moot the very relief they seek and would
provide Plaintiff a 'backdoor' route to the information" that the defendants are trying to
protect.  Id.  "Moreover, assessing these preliminary matters without knowing the
Movants' identi[t]ies will not cause Plaintiff any cognizable harm."  Id.  See also Cinetel
Films, Inc. v. Does 1-1,052, 853 F. Supp. 2d 545, 547 n.2 (D. Md. 2012) (allowing Doe
defendants in BitTorrent litigation to litigate motions to quash and to sever anonymously
where defendants' motions were filed "for the very purpose of protecting their identifying
information" and assessment of "preliminary matters without knowing defendants'

13

identities causes plaintiffs no harm"). "And because Doe (as a defendant) has not purposely availed himself of the courts, the public's interest in knowing his identity is weaker." <u>Sunlust Pictures, LLC v. Does 1-75</u>, 2012 WL 3717768, at *5. Therefore, it is appropriate to consider Pro Se Doe's motion on the merits.

### C. Permissive Joinder Under Fed. R. Civ. P. 20

As described above, Pro Se Doe challenges Patrick Collins' decision to join 38 unrelated individuals as defendants in this case as improper under Fed. R. Civ. P. 20. That Rule permits a plaintiff to join defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Even if the requirements of Rule 20(a) are met, however, under Fed. R. Civ. P. 20(b), entitled "Protective Measures," "the Court has broad discretion to 'issue orders – including an order for separate trials – to protect a party against embarrassment, delay, expense, or other prejudice.'" <u>SBO Pictures v. Does 1-41</u>, 2012 WL 5464182, at *4 (quoting Fed. R. Civ. P. 20(b)). "In addition, pursuant to Fed. R. Civ. P. 21, the Court has discretion to 'sever any claim against any party.'" <u>Id.</u>

Courts throughout the country, including in this district, are divided over whether permissive joinder of many anonymous defendants alleged to have participated in a single BitTorrent swarm is appropriate under Rule 20. <u>See</u>, <u>e.g.</u>, <u>Sunlust Pictures, LLC v. Does 1-75</u>, 2012 WL 3717768, at *3 (listing cases illustrating split in authority). "Courts in

14

this district have been generally disinclined to find joinder improper under the application of Rule 20(a), but have nonetheless exercised their discretion to sever and dismiss the claims." SBO Pictures v. Does 1-41, 2012 WL 5464182, at *3 (citing, as an example, Third Degree Films v. Does 1-47, 286 F.R.D. 188, 194 n.11 (D. Mass. 2012), in which the court found that joinder was technically proper under Rule 20(a), but grounded "its determination to sever the Doe defendants in this action and like actions on a basis squarely within the Court's expertise: fundamental fairness and justice to all parties."). This court concludes, based on the record presented here, that this same approach is appropriate in this case. Thus, while this court finds that joinder of the Doe defendants satisfies the requirements of Rule 20(a)(2), this court nevertheless concludes that joinder in this case would not promote the interests of fairness or judicial economy. Therefore, this court recommends that all of the Doe defendants remaining in the case, with the exception of Doe Number 1, be severed and dismissed from the litigation without prejudice.

## Application of Fed. R. Civ. P. 20(a)(2)

Pro Se Doe does not appear to dispute that Patrick Collins' claims raise at least some questions of law or fact that are common to all defendants, such as whether Patrick Collins is the proper holder of the copyright to the Motion Picture, whether violations of the Copyright Act have occurred, and whether, by entering a BitTorrent swarm, each of the defendants materially contributed to the infringing conduct of the other defendants. "Rule 20 requires only that 'any question of law or fact [be] common to all defendants,'

not that *every* question of law or fact be common." Sunlust Pictures, LLC v. Does 1-75,

2012 WL 3717768, at *4.  Because the record shows that some common questions of law

and fact are present in this case, Patrick Collins has satisfied the second prong of the test

for permissive joinder, and the issue in dispute is whether individuals who allegedly

participated in the same BitTorrent swarm to share a copyrighted work participated in

"the same transaction, occurrence, or series of transactions or occurrences" within the

meaning of Fed. R. Civ. P. 20(a)(2)(A).

"There is not, as of yet, a clearly established rule in the First Circuit as to what

constitutes the same 'transaction or occurrence' for purposes of joinder under Rule

20(a)." SBO Pictures v. Does 1-41, 2012 WL 5464182, at *3.  In Third Degree Films v.

Does 1-47, another Judge in this district  applied the "logical relationship" test adopted by

the Federal Circuit in the recent patent infringement case, In re EMC Corp., 677 F.3d

1351, 1358 (Fed. Cir. 2012).  See Third Degree Films v. Does 1-47, 286 F.R.D. at 194.

Under that test, individual claims are deemed to have met the "same transaction or

occurrence" requirement of Rule 20(a) where "'the defendants' alleged infringing acts,

which give rise to the individual claims of infringement, . . . share an aggregate of

operative facts.'"  Id. (quoting In re EMC Corp., 677 F.3d at 1358) (emphasis omitted).

Although the court in Third Degree Films v. Does 1-47 acknowledged that there

was "substantial merit" to the argument raised by Doe defendants in that case and in

others -- "that because a single swarm is comprised of thousands of peers, and because

the transmissions by the Doe defendants occurred over a period of several weeks, it is

possible -- perhaps likely -- that a particular Doe defendant did not upload to or download

directly from any of the other Doe defendants named in the complaint"-- the court was

nevertheless persuaded by "the equally weighty contrary case law which holds that the

plausible indirect interactions between the named Doe defendants constitute shared,

overlapping facts which suffice to establish a series of transactions or occurrences."  Id.

(quotations, emphasis and citations omitted).  As the court explained:

> [i]t is important to consider that while a peer directly uploads to only
> a small number of peers, those peers in turn upload pieces to other
> peers that later join the swarm.  Thus, a defendant's "generation" of
> peers -- peers that a defendant likely directly uploaded to – helped
> pass on pieces of the Work to the next "generation" of active peers.
> For example, it is not implausible that John Doe No. 10, who
> apparently participated in the swarm on [a given date] shared pieces
> of the Work with peers that in turn, helped propagate the Work to
> later joining peers.  Therefore, Doe No. 10 plausibly indirectly
> uploaded pieces of the work to, say, Doe No. 25 who participated in
> the swarm four days later.  Indeed, it is beyond dispute that the
> initial seeder indirectly uploaded pieces of the Work to every peer in
> the swarm -- no matter when they joined.

Id. at 195 (quoting Third Degree Films v. Does 1-36, No. 11-15200, 2012 WL 2522151,

at *8-9 (E.D. Mich. May 29, 2012) (emphasis omitted)).  Accordingly, the court con-

cluded that "the allegations of infringement via BitTorrent swarm plead more than simply

that the Doe defendants 'committed the exact same violation of the law in exactly the

same way,' but rather that the Doe defendants plausibly infringed the [Motion Picture]

through a series of transactions or occurrences."  Id. (quoting Third Degree Films v. Does

1-36, 2012 WL 2522151, at *8-9).

In the instant case, Pro Se Doe argues that Patrick Collins' asserted claims of infringement and contributory infringement did not arise out of the same transaction, occurrence, or series of transactions because the alleged acts of infringement were "committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses." (Docket No. 11 at 5). Thus, Pro Se Doe essentially makes the same arguments that were raised by the Doe defendants in <u>Third Degree Films v. Does 1-47</u>. As in that case, the plaintiff in this case has alleged that the Doe defendants were part of the same swarm, and that they uploaded and downloaded the exact same file containing the Motion Picture. (Compl. ¶¶ 5, 11; Nicolini Decl. ¶ 32). Therefore, Patrick Collins has alleged sufficient facts to satisfy the logical relationship test.

Moreover, courts in other jurisdictions that have "den[ied] joinder in the BitTorrent context have 'generally done so because the plaintiff failed to allege that the defendants simultaneously participated in a single swarm or that the defendants distributed files directly among themselves.'" <u>Malibu Media, LLC v. John Does 1-14</u>, 2012 WL 6115653, at *7 (quoting <u>Sunlust Pictures</u>, 2012 WL 3717768, at *4). Here, however, the plaintiff alleges that each defendant participated in the same swarm, and that the defendants traded -- that is, uploaded and downloaded -- "the exact same file of the copyrighted works in related transactions through BitTorrent software[,]" as evidenced by the file's unique hash mark. (Compl. ¶¶ 5, 11; <u>see also</u> Nicolini Decl. ¶ 32). It also alleges that "[b]y participating in file swapping with the other Defendants, each

Defendant induced, or caused, or materially contributed to the infringing conduct of the other Defendants." (Compl. ¶ 30). At this stage in the litigation, these allegations are sufficient to show that the defendants took part in "the same transaction, occurrence, or series of transactions or occurrences," as required by Rule 20(a)(2)(A), even though the alleged transactions took place at different locations and at different times between December 23, 2011 and February 15, 2012. See, e.g., Malibu Media, LLC v. John Does 1-14, 2012 WL 6115653, at *7 (finding that claims arose from same series of transactions where plaintiff alleged that "[d]efendants infringed on [plaintiff's] copyright by 'uploading and downloading the same unique copy of the Work with the same Unique Hash Number'" through the use of the BitTorrent protocol, even though transactions occurred at varying times over the course of a month); Pacific Century Int'l v. Does 1-31, No. 11 C 9064, 2012 WL 2129003, at *2 (N.D. Ill. Jun. 12, 2012) (slip op.) (concluding that "allegations that the anonymous defendants participated in the same 'swarm' (at varying times spanning just over a month) sufficiently alleges that they were involved in a 'series of transactions' to warrant joinder under Rule 20"); Third Degree Films v. Does 1-108, 2012 WL 669055, at *5 (concluding that Doe defendants were part of the same transaction, occurrence or series of transactions or occurrences where plaintiff alleged that Doe defendants swapped the exact same file of the same copyrighted work, and submitted evidence connecting the defendants' IP addresses to the same exact "hash"); Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 244 (S.D.N.Y. 2012) (finding it "difficult to see how the sharing and downloading activity alleged in the Complaint . . .

19

could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a)[,]" and declining to sever where plaintiff alleged "that the Doe defendants were trading the exact same file as part of the same swarm").  Therefore, this court finds that at this point in the proceedings, Patrick Collins has satisfied the requirements for permissive joinder under Rule 20(a)(2).

### Protective Measures Under Fed. R. Civ. P. 20(b)

As described above, Rule 20(b) grants the court broad discretion to "issue orders – including an order for separate trials – to protect a party against embarrassment, delay, expense, or other prejudice[.]"  Fed. R. Civ. P. 20(b).  Accordingly, although joinder may be technically appropriate under Rule 20(a)(2), a district court must "'examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side.'"  In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *11 (quoting On the Cheap, LLC v. Does 1-5011, 280 F.R.D. 500, 503 (N.D. Cal. 2011)) (additional citation omitted).  "'Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved.'"  Id. (quoting SBO Pictures, Inc. v. Does 1-3036, No. 11-4220 SC, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011)).  For the reasons that follow, this court concludes that joinder would complicate the proceedings, cause prejudice and unfairness to the Doe defendants in this case, and would not promote the interests of justice.  Therefore, this court recommends that all

Doe defendants remaining in the case, except for Doe Number 1, be severed from the case pursuant to Fed. R. Civ. P. 21.

"The purpose of permissive joinder of parties is 'to promote trial convenience and expedite the final determination of disputes.'" Third Degree Films v. Does 1-47, 286 F.R.D. at 196 (quoting 7 Charles Alan Wright et al., 7 Fed. Practice and Procedure § 1652 (3d ed. 2012)).  Although Patrick Collins argues that joinder would promote judicial economy, particularly in the early stages of litigation, this court disagrees and finds that "permitting joinder would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving different evidence and testimony." Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011).  As one court addressing permissive joinder in the BitTorrent context contemplated,

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.  John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.... Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.  Joinder is improper.

BMG Music v. Does 1-203, No. Civ. A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

Indeed, courts have repeatedly observed that defendants in BitTorrent litigation typically raise defenses based on specific, individualized facts.  See, e.g., SBO Pictures v.

Does 1-41, 2012 WL 5464182, at *4 ("As has already played out in this and other similar cases on the Court's docket, the 'Doe' defendants that have begun to raise defenses have done so individually, on the basis of specific, particularized facts"); Third Degree Films v. Does 1-47, 286 F.R.D. at 196 (describing "disparate defenses" raised by Doe defendants, even at the start of the litigation); In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *12 (describing "panoply of individual defenses" raised by defendants, "including age, religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of WiFi equipment and security software utilized; and the location of defendant's router"). This court does not see how permissive joinder would "promote trial convenience" under such circumstances.

This court also finds that joinder would undermine the purposes of Rule 20 because it would create significant logistical difficulties. As the court observed in Pacific Century Int'l, Ltd. v. Does 1-101, No. C-11-02533 (DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) (slip op.):

> Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross. These difficulties would place tremendous burden on Defendants as well. To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions – a thoroughly unmanageable and expensive ordeal. Similarly, *pro se* Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost.

Even with only 34 Doe defendants remaining in this case, the obstacles presented by the inclusion of so many defendants would remain the same.  Therefore, this court concludes that joinder would complicate rather than expedite the litigation, and would substantially prejudice the defendants.[3]

In addition to the complications identified above, this court, like other courts in this district and elsewhere, remains concerned that joinder is being used "to facilitate a low-cost, low-risk revenue model for the adult film companies."  Third Degree Films v. Does 1-47, 286 F.R.D. at 197.  As described above, this case conforms to the strategy that has been employed by such companies throughout the country, and "potentially open[s] the door to abusive settlement tactics."  Pacific Century Int'l, Ltd. v. Does 1-101, 2011 WL 5117424, at *2.  The fact that four of the Doe defendants already reached a settlement with the plaintiff, and have been dismissed from the case at such an early point in the proceedings, confirms this court's conclusion that joinder is not in the best interests of the defendants and is likely to cause them prejudice.  Therefore, although this court emphasizes that it has observed no bad faith behavior on the part of the plaintiff thus far,

---

[3]  As the court noted in Third Degree Films v. Does 1-47, there are other procedural mechanisms that may be employed by the court in order to achieve efficiencies.  286 F.R.D. at 197.  For example, "the Court retains discretion under Federal Rule of Civil Procedure 42(a) to consolidate any or all of the matters for some portion of the process. Fed. R. Civ. P. 42(a). Thus, the Court may consolidate the cases for purposes of discovery or early motion practice. See id.  Moreover, if it appears that the method of infringement via BitTorrent protocol is largely uncontested, perhaps that matter might be stipulated.  Alternatively, the Court could join the defendants and try that limited issue before a jury and then, applying the principles of issue preclusion, use the jury's finding in the separate trials of each defendant."  Id.  Assuming the plaintiff chooses to proceed against each of the Doe defendants individually, the appropriateness of such alternatives may be explored as the cases develop.

"the Court takes issue with the general structure of this case and like cases, and has determined that the most appropriate method to protect against any potential coercion is to sever the Doe defendants and require them to be sued individually." <u>Third Degree Films v. Does 1-47</u>, 286 F.R.D. at 198.

Allowing Pro Se Doe's motion to sever also ensures that Patrick Collins will pay a $350 filing fee for each defendant. The filing fee, which is required under 28 U.S.C. § 1914(a), "'serves two salutary purposes. First, it is a revenue sharing measure . . . . Second, § 1914(a) acts as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits.'" <u>Id.</u> (quoting <u>In re Diet Drugs</u>, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004)). Thus, by severing the case, the court will be able to avoid the losses in revenue experienced by courts elsewhere in the country. <u>See</u>, <u>e.g.</u>, <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 2012 WL 1570765, at *13 ("In the four cases before this Court, plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory. Considering all the cases filed by just these three plaintiffs in this district, more than $100,000 in filing fees have been evaded."). Furthermore, it will help to ensure that Patrick Collins is pursuing the Doe defendants for the purpose of protecting its intellectual property and not simply to coerce early settlements without any intention of litigating its claims to completion.

In short, this court finds that the interests of justice and judicial economy would best be served if the matter were dismissed as to all defendants except Doe Number 1, without prejudice to refiling against each defendant individually. Accordingly, this court

recommends that Pro Se Doe's motion to sever be allowed, and that Doe Number 30's motion to quash be denied as moot.

## IV.  CONCLUSION

For all the reasons described above, this court recommends to the District Judge to whom this case is assigned that Pro Se Doe's "Motion to Quash or Modify Subpoena" (Docket No. 11), which has been construed as a motion to sever, be ALLOWED, and that the claims against all defendants except Doe Number 1 be dismissed without prejudice to refiling against each of the defendants individually.  In light of this court's recommendation that Doe Number 30 be dismissed from the case, this court further recommends that the "Motion to Quash Subpoena" (Docket No. 10) filed by that individual be DENIED AS MOOT.[4]

                   / s / Judith Gail Dein
                   Judith Gail Dein

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

United States Magistrate Judge